```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
```

**Russell Krol,**                       :
    **Plaintiff,**                      :
                                   :
**v.**                                  :
                                   :    **Case No. 3:06cv368 (JBA)**
**Royal & SunAlliance Personal**        :
**Insurance Company a/k/a**             :
**Axis Reinsurance Company,**           :
    **Defendant.**                     :

### RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 13]

Plaintiff Russell Krol brought this action against defendant Royal & SunAlliance Personal Insurance Co. a/k/a Axis Reinsurance Co. ("Royal"), the insurance company who insured plaintiff's employer's liability as required under the Workers' Compensation Act, Conn. Gen. Stat. § 31-284 et seq., alleging breach of contract (Count 1), violation of Conn. Gen. Stat. § 31-290c (Count 2), negligent and intentional infliction of emotional distress (Counts 3-4), and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a (Count 5), in relation to defendant's handling of plaintiff's workers compensation claim.  See Am. Compl. [Doc. # 11].  Defendant now moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts 2-5 contending: (1) Count 2 should be dismissed as it fails to allege the specific intent which is a necessary element for the violation asserted; (2) Counts 3-5 should be dismissed as barred by the exclusionary provisions of the Workers' Compensation Act;

(3) Counts 3-4 should alternatively be dismissed because they fail to allege each of the elements necessary for negligent and intentional infliction claims; and (4) Count 5 should alternatively be dismissed because it fails to allege a violation of the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815, et seq., which is a necessary predicate to a CUTPA claim against an insurer.  See Mot. to Dismiss [Doc. # 13].  For the reasons that follow, defendant's motion will be granted in part and denied in part.

## I.   Factual Background

The allegations in the Amended Complaint, which at this stage the Court must accept as true, reveal the following facts. "On or about April 9, 1998, the plaintiff Russell Kroll sustained work injuries to his back and knee, which injuries were accepted as compensable under the Workers' Compensation Act."  Am. Compl. at 1 ¶ 1.  Before the date of plaintiff's injuries, defendant had in effect a contract "insuring the plaintiff's employer's liability . . . for work injuries accepted as compensable under the Act" and "which insurance contract was purchased for the benefit of the plaintiff as one of the plaintiff's employer's employees who suffered injuries compensable under the Act."  Id. ¶ 2.

During this time, defendant was conducting the business of an insurance company licensed by the State of Connecticut and

defendant's contracts insuring compensable work injuries were subject to the laws of the State of Connecticut.  Id. at 1-2 ¶¶ 4-5.  Pursuant to Conn. Gen. Stat. § 31-240, "all Workers' Compensation Insurance contracts must contain an agreement that the insurer is 'directly and primarily liable to the employee,' thereby creating privity of contract between the plaintiff and the defendant by contractual agreement of the defendant," and pursuant to Conn. Gen. Stat. § 31-287, "an injured employee entitled to compensation under the provisions of the Act may enforce his claim to compensation against the insurer 'to the same extent that the insured could have enforced his claim against such insurer had he paid compensation,' thereby creating privity of contract between the plaintiff and the defendant." Id. at 2 ¶¶ 6-7.

Count 2

Plaintiff alleges that defendant "knew, or should have know [sic], that the plaintiff relied on the . . . contract of insurance to provide necessary and appropriate medical care, and financial benefits and that its failure to authorize such care of the payment of such benefits to the plaintiff would put the plaintiff in a condition of severe financial distress."  Id. at 1 ¶ 3.  According to the Amended Complaint, defendant "intentionally misrepresented and failed to disclose the medical necessity of Synvisc treatments for the plaintiff['s] compensable

3

knee condition and withheld payment therefore," "intentionally, denied, misrepresented and failed to disclose that the Workers' Compensation Commission had authorized Dr. Mastroianni as the plaintiff's treating doctor and thereby prevented Dr. Mastroianni from scheduling an MRI for the plaintiff['s] compensable back condition for a period of time during which the plaintiff was able to submit to back surgery," and "intentionally, denied and misrepresented that it had agreed to make an 'advance' of $9,000" to plaintiff.  Id. at 3-4 ¶¶ 8-10.  Plaintiff alleges that by this intentional conduct, defendant "intended to deprive the plaintiff of, and convert to its use, property rightfully belonging to the plaintiff, to wit, the money it wrongfully withheld to pay for the services of treating doctors, to pay for necessary and proper treatment, to pay the agreed advance, and to pay wage loss benefits during any period of recovery from back surgery."  Id. at 4 ¶ 11.  As a result, plaintiff claims, he "was both delayed and prevented from obtaining necessary medical treatment resulting in the undermining of the state of his physical and mental health."  Id. at 4 ¶ 12.

Counts 3-4

Plaintiff alleges that defendant "knew, or should have known, that the negligent breach of its contractual and statutory duty of care owed to the plaintiff requiring it to provide necessary and appropriate medical care, and its failure to

authorize such care for the plaintiff for injuries compensable under the Act, and that its failure to pay the agreed $9,000 'advance' would create an unreasonable risk of causing the Plaintiff emotional distress." Id. at 4 ¶ 9.  Plaintiff also alleges that defendant "intended to inflict and knew, or should have known through its expertise as an insurer, that its conduct would likely cause, the plaintiff severe emotional distress, the exacerbation of the pain from [] his preexisting back, knee and heart conditions, and financial damages and losses" and that defendant's conduct was "extreme and outrageous." Id. at 5 ¶¶ 14-15.  The plaintiff claims that as a result of this conduct, he suffered "severe" emotional distress. Id. at 6 ¶ 16.

Count 5

Plaintiff claims that the conduct detailed in his Amended Complaint "was in violation of the Connecticut Unfair Insurance Practices Act, C.G.S. § 38a-815 and specifically § 83a-816(1), (2), (6), (7) and (15)" and that "defendant has acted as aforesaid in other cases such that its conduct is a general business practice to discourage claims under its policies of insurance, breach its contractual and statutory duties to persons like the plaintiff who are covered under its contracts of insurance and deprive covered persons of their rights and benefits due, and, thereby, taking an unfair trade advantage over business competitors who truly, fairly and justly discharge their

duties to covered claimants under the Act and their contracts of insurance in violation of [CUTPA]." Id. at 6 ¶¶ 17-18. Plaintiff claims that as a result of defendant's conduct, he has been "financially damaged and injured and may be financially damaged in the future," "has been caused to suffer frustration, distress, anxiety, and psychological stress, the exacerbation of his preexisting back, knee and heart conditions some of which injuries are of a permanent nature," and that he "has experienced severe pain and suffering," his "ability to pursue and enjoy life's activities" has been injured, and he "has sustained financial damages and losses, including the limitation of his life activities and his ability to work and earn income." Id. at 7 ¶¶ 21-25.

## II.  Standard

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Jahgory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329

(2d Cir. 1997).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

### III. Discussion

    A.   Count 2

As noted above, Count 2 alleges that defendant intentionally misrepresented and failed to disclose: the medical necessity of certain medical treatments for plaintiff and withheld payment therefor, that Dr. Mastroianni had been authorized as plaintiff's treating doctor thus preventing Dr. Mastroianni from scheduling an MRI for the plaintiff, and the truth as to whether it had agreed to make a $9,000 advance.  Am. Compl. at 3-4 ¶¶ 8-10.

Conn. Gen. Stat. § 31-290c provides, inter alia:

> Any person or his representative who makes or attempts to make any claim for benefits, receives or attempts to receive benefits, prevents or attempts to prevent the receipt of benefits or reduces or attempts to reduce the amount of benefits under this chapter based in whole or in part upon (1) the intentional misrepresentation of any material fact including, but not limited to, the existence, time, date, place, location, circumstances or symptoms of the claimed injury or illness or (2) the intentional nondisclosure of any material fact affecting such claim or the collection of such benefits, shall be guilty of a class C felony if the amount of benefits claimed or received, including but not limited to, the value of medical services, is less than two thousand dollars, or shall be guilty of a class B felony if the amount of such

>benefits exceeds two thousand dollars.  <u>Such person shall also be liable for treble damages in a civil proceeding under section 52-564</u>.

Conn. Gen. Stat. § 31-290c(a) (emphasis added).  Thus, by its terms, the statute appears to encompass plaintiff's claim, which can be characterized as one alleging defendant's "prevent[ing] or attempt[ing] to prevent the receipt of benefits or reduc[ing] or attempt[ing] to reduce the amount of benefits based in whole or in part upon . . . the intentional nondisclosure of any material fact affecting such claim or the collection of such benefits." <u>Id</u>.  Conn. Gen. Stat. § 52-564, referenced in § 31-290c(a), in turn states: "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."  Accordingly, the plaintiff must allege the elements of § 31-290c, as well as those of § 52-564.  <u>See</u> <u>Delpier v. Conn. Interlocal Risk Mgmt. Agency</u>, No. CV 010164366, 2001 WL 1681912, at *3 (Conn. Super. Ct. Nov. 28, 2001) (Pittman, J.) (granting motion to strike plaintiff's § 31-290c claim where plaintiff "failed to allege the elements of common law or statutory theft in her complaint").  Additionally, as is also clear from the face of the statutory provisions, "to violate the prohibitions in this statute the perpetrator must do so by intentionally misrepresenting a material fact or intentionally failing to disclose a material fact affecting such claim or the collection of such benefits."  <u>Id</u>.

8

Defendant contends that Count 2 "fails to allege the specific intent required as essential elements of both § 31-290c and § 52-264 [but] merely alleges in conclusory fashion that the defendant's failure to disclose the necessity of the synvisc treatments and failure to advance the plaintiff $9,000 were 'intentional misrepresentations,' and that [defendant] 'intended to deprive the plaintiff . . . of money rightfully belonging to the plaintiff,'" and argues that conclusory allegations or legal conclusions "masquerading as factual conclusions" cannot properly withstand a motion to dismiss.  Def. Mem. [Doc. # 14] at 5-6.  Plaintiff refers to his allegations concerning intentional misrepresentations and contends such allegations are sufficient.

Notwithstanding defendant's contention that plaintiff's allegations are "conclusory," however, there can be no dispute that the Amended Complaint contains allegations that defendant made intentional misrepresentations concerning the medical necessity of certain treatments, the authorization of Dr. Mastroianni, and the payment to plaintiff of a $9,000 advance, Am. Compl. ¶¶ 8-10, which therefore satisfy the requirement of pleading intentional misrepresentation and/or non-disclosure.

Further, plaintiff has pled facts suggesting circumstances which if proved might entitle him to recovery on a claim for civil larceny under § 52-564, at least with respect to the alleged intentional misrepresentation/non-disclosure concerning

the $9,000 advance.  "The word 'steals' as used in General Statutes § 52-564 is synonymous with the definition of larceny under General Statutes § 53a-119." Lauder v. Peck, 11 Conn. App. 161, 165 (Conn. App. Ct. 1987).  Section 53a-119 states "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner," and larceny also "'includes . . . [r]eceiving stolen property.  A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen.'" Lauder, 11 Conn. App. at 165.  Plaintiff alleges, inter alia, that Royal "intentionally, denied and misrepresented that it had agreed to make an 'advance' of $9,000" to him, Am. Compl. ¶ 10, which "payment of $9,000 [was] an 'advance' for benefits due and to which advance [defendant] agreed before the Commissioner at an informal hearing," id. ¶ 8(B).  Depending on the context to be supplied by a fully developed record, these allegations thus might support a claim for civil theft because if it can be proved that the $9,000 "advance" retained by defendant constituted benefits due (and promised) to plaintiff as part of his workers compensation claim, then it might constitute his "property" capable of being wrongfully taken, withheld, or stolen by

defendant through the intentional misrepresentation/non-disclosure alleged.  Accordingly, defendant's motion as to Count 2 must be denied and the claim left for further development in discovery.

     B.   Counts 3-5

     Defendant contends that Counts 3-5 should be dismissed as barred by the exclusionary provisions of the Workers' Compensation Act, as articulated in DeOliveira v. Liberty Mut. Ins. Co., 273 Conn. 487 (Conn. 2005).  Plaintiff disputes defendant's contention, arguing that "[t]his case does not arises [sic] from a work-related injury sustained by the plaintiff and does not claim damages for the bad faith handling of his workers compensation claim," Pl. Opp. [Doc. # 15] at 1, and contending that his claims fall within the narrow exception to the exclusivity rule pronounced in DeOliveira.

     Notwithstanding plaintiff's arguments, however, plaintiff's CUTPA claim and claims for intentional and negligent infliction of emotional distress are clearly barred by the holding in DeOlivereira.  The Connecticut Supreme Court's decision in DeOliveira was "the culmination of fifteen years of litigation between the plaintiff . . . and the defendant [insurance company] . . . resulting in multiple lawsuits alleging, in essence, that the defendant unreasonably delayed its processing of the plaintiff's workers compensation claim, thereby causing him to

suffer psychological injuries in addition to his physical injury." 273 Conn. at 489. The action came before the Supreme Court "emanating from two separate actions, in the form of five questions certified to [it] by the United States District Court for the District of Connecticut . . . and concurrently reserved by the Superior Court for advice." Id. In both actions, plaintiff had alleged, inter alia, negligent and intentional infliction of emotional distress and a CUTPA violation. Id. at 493-94. The Court analyzed the Act's exclusionary provisions, noting the legislature's "intention to bar a tort action for the same conduct proscribed and penalized under the act," and concluded that plaintiff's claims were barred by the Act, finding "Connecticut does not recognize a cause of action for bad faith processing of a workers' compensation claim." Id. at 499-502. DeOliveira recognized that the court "previously ha[d] recognized a narrow exception to the exclusivity provision for intentional torts," stating "[w]e recognize that there could be an instance in which an insurer's conduct related to the processing of a claim, separate and apart from nonpayment, might be so egregious that the insurer no longer could be deemed to be acting as an agent of the employer and, thus, a claim arising from such conduct would not fall within the scope of the act." Id. at 507 (emphasis in original).

     Plaintiff cites to the above language in DeOliveira and

12

other cases, see Pl. Opp. at 7, contending that his claims fall within DeOliveira's narrow exception to the exclusionary bar, claiming "intentional torts are not shielded by [the Workers' Compensation Act]."  However, Mr. Krol asserts the same claims in Counts 3-5 as the plaintiff in DeOliveira asserted – intentional and negligent infliction of emotional distress and a CUTPA violation – and DeOliveira found that those claims were barred. See also Lesnewski v. General Casualty Co. of Wisconsin, No. CV 030824499S, 2006 WL 1046477, at *3 (Conn. Super. Ct. Apr. 4, 2006) (plaintiff's claims for breach of the covenant of good faith and fair dealing, negligent infliction of emotional distress, and violation of CUTPA did not fall within DeOliveira exception for "conduct by the insurer which is 'so egregious' that the insurer can no longer be deemed to be the agent of the employer," even where plaintiff argued "that a cause of action for bad faith processing of a workers' compensation claim as it relates to delay in medical treatment is not barred"); DiNuzzo v. Bute, No. CV 020469411S, 2006 WL 618768, at *1-2 (Conn. Super. Ct. Feb. 27, 2006) (granting motion to strike plaintiff's claims of intentional infliction of emotional distress and violation of the CUTPA arising out of allegations that defendant (case manager for plaintiff's workers' compensation claim) "made false and misleading statements to induce plaintiff to change his treating physician thereby causing him to suffer damages," finding

plaintiff's claims did not fall within the DeOliveira exception).

The conduct alleged by plaintiff in this case is far less egregious than the examples given by the DeOliveira court of conduct "so egregious that the insurer no longer could be deemed to be acting as an agent of the employer and, thus, a claim arising from such conduct would not fall within the scope of the act."  273 Conn. at 507 (sufficiently egregious conduct where insurer's agent "misrepresented identity to claimant, caused her to become emotionally involved with him and induced her to engage in unusual activities beyond her normal physical capabilities while another person filmed her, resulting in aggravation of her physical injury and physical and mental breakdown requiring hospitalization upon claimant discovering deceit" and case where "plaintiff who suffered emotional trauma after being assaulted at work alleged that carrier, in attempt to reduce its monetary exposure, insisted on psychiatric examination with deliberate intent that plaintiff either commit suicide or drop her claim, and plaintiff thereafter attempted suicide").

Thus, plaintiff's Counts 3-5 fall squarely within the DeOliveira exclusion for claims alleging bad faith handling of workers' compensation claims and accordingly must be dismissed.

**IV.   Conclusion**

For the foregoing reasons, defendant's Motion to Dismiss [Doc. # 13] is DENIED in part, as to Count 2, and GRANTED in

part, as to Counts 3-5, which claims are dismissed.

                                      IT IS SO ORDERED.

                                        _____/s/_____
                                        Janet Bond Arterton
                                        United States District Judge

**Dated at New Haven, Connecticut this 10th day of January, 2007.**